**E-Filed 3/6/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN CARTER, | Case Number C 05-3974-JF (RS) |
| Plaintiff, | ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS AND FOR MORE DEFINITE STATEMENT WITH LEAVE TO AMEND |
| v. | |
| THE COUNTY OF SANTA CLARA, et al., | |
| Defendants. | |
| | [Doc. Nos. 13, 15] |

Defendants City of Campbell ("City") and Campbell police officer D.P. Livingston ("Livingston") move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for a more definite statement under Federal Rule of Civil Procedure 12(e).  The Court has considered the briefing as well as the oral arguments presented at the hearing on March 3, 2006.  For the reasons discussed below, the motion will be granted with leave to amend.

**I. BACKGROUND**

Plaintiff Karen Carter ("Carter") alleges the following facts:  on April 3, 2005, at approximately 1:00 a.m. in the morning, Carter was a customer in Boswell's Bar, located in the

1    Pruneyard Shopping Center in Campbell, California.  Complt. ¶ 10.  Two bouncers forcibly

2    ejected her from the bar, threw her to the ground and then stood over her while using abusive

3    language to describe her.  *Id.*  As a result of this incident, Carter suffered cuts, abrasions and

4    bruises.  *Id.*

5            City police officers arrived at the scene, at which time Carter stated that she wanted to file

6    assault charges against the bouncers.  *Id.* at ¶ 11.  Livingston and the other officers tried to

7    convince Carter not to file assault charges but to take a taxicab home.  *Id.*  Because the officers

8    refused to fill out a report, Carter turned to the crowd that had gathered and asked for names and

9    telephone numbers from any witnesses.  *Id.*  At that point Livingston handcuffed Carter and told

10   her that she was under arrest for public intoxication.  *Id.*  Livingston placed Carter in a patrol car

11   and transported her to the Santa Clara County ("County") booking facility.  *Id.*  Carter told

12   Livingston that she would like to go to the emergency room for her injuries, but he stated that she

13   would be seen by a nurse at the jail.  *Id.*

14           While Carter was waiting for completion of her paperwork, an elderly woman in the same

15   area asked to be taken to the restroom.  *Id.* at ¶ 12.  Carter told officers and a nurse who were

16   present that she did not mind waiting while somebody escorted the other woman to the restroom.

17   *Id.*  A female correctional officer, Rodriguez, responded by telling Carter to spit out her gum.  *Id.*

18   When Carter refused, Rodriguez and another officer, Asban, dragged Carter across the room and

19   fingerprinted her.  *Id.*  Rodriguez was violent during the process, pulling and twisting Carter's

20   fingers.  *Id.*  When Carter pulled her hand away, Rodriguez and other officers, including

21   Livingston, attacked her, slamming her face to the floor, twisting her arms, neck, head and back,

22   and sitting on her.  *Id.*  Carter then was "slammed backwards into a restraining chair" and

23   shackled so tightly as to cause loss of circulation to her arms and legs while a hood was placed

24   over her face.  *Id.*  When Carter later attempted to stand, her feet had gone to sleep such that she

25   lost her balance.  *Id.*  During the physical attack by the group of officers, a chunk of hair was

26   pulled from Carter's head.  *Id.*

27           Carter filed suit against the County, the City, all of the officers allegedly involved in her

28   arrest, booking and fingerprinting, and Boswell's and its principals.  She alleges the following

                                                    2

1   claims:  (1) a § 1983 claim against the defendant officers; (2) a *Monell* claim against the County

2   and the City; (3) assault and battery against all defendants; (4) intentional infliction of emotional

3   distress against all defendants; (5) negligence against all defendants; and (6) a claim under

4   California Civil Code § 52.1 against all defendants.

5                                       **II. LEGAL STANDARD**

6           For purposes of a motion to dismiss under Rule 12(b)(6), the plaintiff's allegations are

7   taken as true, and the Court must construe the complaint in the light most favorable to the

8   plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court's review is limited to the

9   face of the complaint and matters judicially noticeable.  *North Star International v. Arizona*

10  *Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v.*

11  *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D.

12  Cal. 1995).   Leave to amend must be granted unless it is clear that the complaint's deficiencies

13  cannot be cured by amendment.  *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir.

14  1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.

15  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

16          Under Rule 12(e), the Court may order a plaintiff to provide a more definite statement

17  with respect to a complaint that is so vague or ambiguous that the defendant cannot reasonably be

18  required to frame a responsive pleading.  Fed. R. Civ. P. 12(e).

19                                        **III. DISCUSSION**

20          As an initial matter, the Court notes that several of Defendants' arguments are based upon

21  facts not alleged in the complaint and not subject to judicial notice.  For example, Defendants

22  assert the following "facts" in their motion papers:  Carter declined medical care at the

23  Pruneyard; Carter had been drinking heavily at the bar and harassing other patrons; two separate

24  taxicabs refused to transport Carter because she was intoxicated; Carter attacked the two

25  bouncers who ejected her from the bar, and the bouncers wanted to prosecute Carter for assault

26  and battery; Livingston did not discourage Carter from filing a report regarding the alleged

27  assault by the bouncers; Livingston arrested Carter for public intoxication because he was

28  concerned that she was endangering her own safety due to her drunken state; while Carter was

3

1   being transported to jail, she demanded to be taken to her personal physician, not to the

2   emergency room as alleged in the complaint; Livingston dropped Carter off with jail staff and

3   last saw her as she was being led away by County corrections officers; Livingston already had

4   left the jail when Carter was fingerprinted and allegedly was attacked by the group of officers;

5   and Carter attended Alcoholics Anonymous ("AA") meetings in order to avoid criminal

6   prosecution and the charges against her were dropped based upon proof of attendance at AA

7   meetings.

8          Because these asserted facts are not alleged in the complaint, and are not the appropriate

9   subject of judicial notice, the Court cannot consider them in ruling on Defendants' motion.

10  Defendants submit some documentary evidence in support of their version of events, and argue

11  that it would be unfair for the Court to decline to consider the true facts because then Carter

12  would prevail based upon artful pleading.  If Defendants believe that the true facts are not as

13  alleged in the complaint, and that the true facts would give rise to disposition of Carter's claims

14  in Defendants' favor, Defendants may bring a motion for summary judgment.  A motion to

15  dismiss is not the appropriate vehicle for many of the arguments Defendants are attempting to

16  make.

17  **A.     First Claim Under § 1983**

18         Carter asserts a claim under 42 U.S.C. § 1983 against all defendant officers, including

19  Livingston, alleging violation of her rights under the Fourth, Fifth, Sixth, Eighth, Ninth and

20  Fourteenth Amendments to the United States Constitution.  As Carter appears to concede in her

21  opposition, she has failed to allege any cognizable claims under the Fifth, Sixth, Eighth, Ninth or

22  Fourteenth Amendments.  Carter argues that she has asserted a cognizable § 1983 claim for

23  unlawful arrest and excessive force under the Fourth Amendment.  With respect to the latter

24  claims, the Court concludes that the complaint is indefinite.  It is not clear upon what basis Carter

25  alleges that she was unlawfully arrested.  If Carter wishes to allege that she was not actually

26  intoxicated, she should do so explicitly.  With respect to the excessive force claim, Carter does

27  allege that Livingston was one of the officers who attacked her at the jail.  However, Carter does

28  not allege what, precisely, Livingston did during that attack.  More specificity regarding the

4

1   attack is required in order to state a viable claim.  Accordingly, the Court will dismiss the first

2   claim with leave to amend so that Livingston may allege with more particularity claims of

3   unlawful arrest and excessive force in violation of the Fourth Amendment.

4        Livingston argues that the *Heck* doctrine bars Carter's claim that she was arrested without

5   probable cause.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a civil

6   rights action for damages may not be asserted if a judgment in the plaintiff's favor would

7   "necessarily imply the invalidity" of a conviction or sentence which remains outstanding against

8   the plaintiff.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Trimble v. City of Santa*

9   *Rosa*, 49 F.3d 583, 585 (9th Cir. 1995).  Carter was not convicted of the crime for which she

10  claims she was falsely arrested, public intoxication.  Livingston argues that the reason Carter was

11  not convicted was that she agreed to attend AA meetings and that the charges were dismissed

12  after she demonstrated proof of such attendance.  Livingston argues that the *Heck* doctrine

13  extends to this situation even though Carter was not convicted.  Even assuming, without

14  deciding, that *Heck* would be applicable to the situation Livingston describes, the facts upon

15  which the *Heck* argument is premised – i.e., that the charges were dismissed in exchange for

16  Carter's attendance at AA meetings – do not appear on the face of the complaint and are not

17  judicially noticeable.

18       Livingston also argues that Carter's arrest was objectively reasonable and therefore that

19  he is entitled to qualified immunity.  A determination as to an officer's entitlement to qualified

20  immunity involves a two-pronged inquiry.  First, do the facts alleged, viewed in the light most

21  favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional

22  right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.

23  2002).  This first prong mirrors the substantive summary judgment inquiry on the merits of the

24  constitutional claim.  *Sorrels*, 290 F.3d at 969.  Second, if the plaintiff has alleged a deprivation

25  of a constitutional right, was that right clearly established?  *Saucier*, 533 U.S. at 201; *Sorrels*,

26  290 F.3d at 969.  "The relevant, dispositive inquiry in determining whether a right is clearly

27  established is whether it would be clear to a reasonable officer that his conduct was unlawful in

28  the situation he confronted."  *Saucier*, 533 U.S. at 202.  This inquiry is wholly objective; the

5

1    defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant. *Sorrels*, 290

2    F.3d at 970.

3          In the instant case, Carter has failed to allege her claims of unlawful arrest and excessive

4    force with sufficient clarity. However, she may well be able to cure this defect and allege

5    conduct on the part of Livingston that would constitute violations of her Fourth Amendment

6    rights. Livingston appears to be requesting that the Court accept *his* version of events, based

7    upon facts outside the scope of the pleadings, to conclude as a matter of law that his conduct was

8    objectively reasonable. As noted above, the Court cannot consider facts outside the scope of the

9    pleadings on a motion to dismiss. Moreover, where there is a factual dispute as to what

10   happened, the Court cannot simply choose to believe the defendant's version of events in order to

11   grant a motion to dismiss on the basis of qualified immunity.

12         Livingston argues that the claims against him in his official capacity should be dismissed

13   because such claims are treated as claims against the City and Carter already is asserting claims

14   against the City. The Court declines to dismiss the official capacity claims against Livingston,

15   because Carter's *Monell* claim against the City is different in nature from his official capacity

16   claims against Livingston.

17   **B.    Second Claim Under § 1983 – *Monell***

18         "[A] local government may not be sued under § 1983 for an injury inflicted solely by its

19   employees or agents." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694

20   (1978). "Instead, it is when execution of a government's policy or custom, whether made by its

21   lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

22   the injury that the government as an entity is responsible under § 1983." *Id*. In examining

23   municipal liability under Section 1983, a court must determine "whether there is a direct causal

24   link between a municipal policy or custom and the alleged constitutional deprivation." *Canton v.*

25   *Harris*, 489 U.S. 378, 385 (1989). As noted above, Carter has failed to allege a viable § 1983

26   claim against Livingston. Even if she had, she has failed to identify any particular policy or

27   custom of the City that was in play during the events in question. Accordingly, the *Monell* claim

28   against the City will be dismissed with leave to amend.

6

1  **C.      Third Claim For Assault And Battery**

2           Presumably, Carter's assault and battery claim against Livingston is based upon his

3  alleged use of excessive force.  As discussed above, the complaint fails to allege what, precisely,

4  Livingston did during the alleged attack by the group of officers at the jail.  Accordingly, the

5  claim for assault and battery will be dismissed with leave to amend.

6  **D.      Fourth Claim For Intentional Infliction Of Emotional Distress**

7           The fourth claim for intentional infliction of emotional distress is derivative of her claim

8  for assault and battery.  Because the latter claim is subject to dismissal with leave to amend, so

9  too is the former claim.

10  **E.      Fifth Claim For Negligence**

11          Carter's claim for negligence against Livingston appears to be based upon his exercise of

12  discretion in the course and scope of his official duties.  California Government Code § 820.2

13  provides as follows:  "[e]xcept as otherwise provided by statute, a public employee is not liable

14  for an injury resulting from his act or omission where the act or omission was the result of the

15  exercise of the discretion vested in him, whether or not such discretion be abused."  While the

16  Court is doubtful that Carter can allege a viable claim for negligence in light of § 820.2, the

17  Court will dismiss this claim with leave to amend.

18  **F.      Sixth Claim Under California Civil Code § 52.1**

19          California Civil Code § 52.1(a) provides that if a person interferes, or attempts to

20  interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the

21  constitutional or statutory rights of any individual, local prosecutors may bring a civil action for

22  equitable or injunctive relief.   Section 52.1(b) allows the individual so interfered with to sue for

23  damages.  To come within these provisions, a plaintiff must demonstrate that the defendant's

24  threats, intimidation, or coercion interfered with a constitutional or statutory right.  *Venegas*, 32

25  Cal.4th at 843.  The basis for Carter's § 52.1 claim is unclear.  Accordingly, the § 52.1 claim will

26  be dismissed with leave to amend.

27  **G.      Punitive Damages**

28          The claim for punitive damages will be dismissed with leave to amend because Carter has

7

1  failed to allege a viable claim against either Livingston or the City.  The Court notes that

2  California Government Code § 818 precludes an award of punitive damages against a

3  municipality pursuant to California Civil Code § 3294 (the general punitive damages provision),

4  and that Carter has not identified any other basis for punitive damages against the City.

5                                          **IV. ORDER**

6           Defendants' motion is GRANTED WITH LEAVE TO AMEND as set forth herein.  Any

7  amended complaint shall be filed and served within twenty (20) days after service of this order.

8

9

10

11

12  DATED:  3/6/06

13

14                                          _____
                                            JEREMY FOGEL
15                                          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

1  This Order was served on the following persons:

2

3  Michael G. Ackerman     cjs@aandklaw.com,

4  Mark Scott Collins     msc@cslawfirm.com, shunt@cslawfirm.com; steve@cslawfirm.com

5  Kevin B. Kevorkian     kbk@aandklaw.com,

6  Christopher James Olson , Esq     colson@smwb.com,

7  David Michael Rollo     david.rollo@cco.sccgov.org, anna.espiritu@cco.sccgov.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-3974-JF (RS)
ORDER GRANTING WITH LEAVE TO AMEND CITY DEFENDANTS' MOTION ETC.
(JFLC2)